The opinion of the Court was delivered by
Withers, J.
A more enlarged view of the circumstances which characterize this cause may be derived by consulting the *172 reports of it, as it has been presented to this Court, to be found in 4 Strob. 438, and 5 Rich. 386. Such proceedings were had in the Court of Equity by Napier & Company against Gidiere, as executor of Descourdes, as resulted in an order, by that Court, — a rule to that effect having been made absolute, — that he be attached. A writ, or process to that end, was placed in the hands of A. H. Brown, Sheriff of Charleston District, and he seized Gidiere by virtue thereof. Gidiere, upon petition in Equity, was enlarged, upon his executing a bond to the plaintiff here, with an alternative condition, to wit: that he should pay a certain sum of money into the Court of Equity within ten days after the decree of the Appeal Court, (the cause then pending in appeal,) “ or surrender himself a prisoner to the sheriff, under the attachment now in force against him.” The money was not paid as stipulated, and the Court of Equity directed that Napier be allowed to proceed, at his own cost and charges, upon the bond aforesaid, and that the commissioner attend ivith the bond, in order to sustain the suit. Such is a very brief abstract, intended only to be adequate to the present occasion, of the origin and cause of this action. Gidiere pleaded sundry separate matters in bar; it will suffice to specify that which is to the following effect: that he was ready to surrender himself within the time limited in the bond, but that there was no attachment in force against him, and that Napier, the complainant in the cause against him, for whose benefit the attachment was ordered and this suit brought, would not deliver the said attachment, or any other authority, to the sheriff for receiving him as as a prisoner.
To this the plaintiff rejoined, alleging that there was an attachment in the hands of the sheriff in force against Gidiere; and issue was joined.
Mr. Brown, the sheriff, testified, that Oliver M. Smith, an attorney at law, lodged the attachment (originally) with him, and said he would give $ 100 to have Gidiere arrested — that he knew no other person in connection with the attachment, though Bentham and Hunt were attorneys of record — that he succeeded, by exer *173 cising special diligence, in arresting Gidiere — so made return on the process of attachment, and afterwards as follows: “ Discharged by the Court.” (This had reference to the order out of which the bond now in suit arose.) Mr. Brown further testified, that he believed the attachment was delivered to or taken by Oliver M. Smith from his office — that it never came back there — that on rendition of the decree of the Appeal Court, he had no authority to receive Gidiere, and that Gidiere came to him and proposed to surrender, or he was told by one of his deputies that he had proposed to do so.
Upon such issue and evidence the plaintiff, on motion, was non-suited. The motion here is to set aside the non-suit; and the single point is, whether an attachment was in force, in the hands of the Sheriff of Charleston District against Gidiere.
We shall not discuss the question upon the assumption that the process of attachment, once in the sheriff’s office, had been lost by casualty or by negligence of the sheriff, or had been purloined by Gidiere, or had disappeared through his contrivance or instrumentality. It is a fact, not open to reasonable question, that, according to the evidence, Oliver M. Smith procured the custody of it, and never returned it, and no other was ever lodged with the sheriff.
It is urged that this was not to affect Gray, commissioner, for Smith could not be supposed to represent him, and it is stated that Gray represented in the action the interests of others beside Napier. But it is undeniable, that from the entire nature of the proceedings in Equity, leading to the execution of the bond, and from the express order of the Court of Equity, this action was at the instance and for the use of Napier, and was to be undertaken and conducted at his cost and charges. Gray, commissioner, could not be more than a mere nominal plaintiff in this cause. And in various instances this Court does notice and protect parties who are really the litigants under the shadow of other’s names. As to the control of the process of attachment, how could the sheriff dispute the authority of Smith, and how can Napier now dispute that authority l He was the attorney at *174 law, who lodged the process. Napier claimed and now claims the benefit of that act, and no revocation of Smith’s authority before the re-delivery to him ever reached Sheriff Brown. The proposition, as we now have the case, is clear enough, that the sheriff was authorized and bound to respond to Smith quoad the process, and Napier cannot now dispute the act of Smith.
It is moreover contended, that an attachment was of force, and, in contemplation of law, of force in the sheriff’s hands, inasmuch as the order or decree of the Court of Equity remained in full vigor, and that Gidiere was to see to it, on pain of incurring the forfeiture stipulated in his bond; that it was in condition to enable him to render himself, and to warrant his detention ; and that this view is vindicated by considering, that the temporary suspension of his imprisonment was at his instance and in ease of himself.
But it is obvious to answer, that not the Court of Equity only, but Napier, the party in interest, could lawfully supersede the attachment and the writ — if indeed we are to distinguish them. It cahnot be doubted that Napier, directly or by representative, might instruct the sheriff not to proceed. It is not necessary to cite authority to establish, that, in general, a sheriff can arrest no one without due warrant of law — without precept, where that is the known and familiar form of authority, though he may arrest without precept for treason, felony or misdemeanor, committed in his presence (vide sec. 22, Sheriff’s Act, 11 Stat. 28). He, or his deputy, must attend the Courts of Equity, “ and enforce such rules as the Courts may establish,” (sec. 22, 11 Stat. 30). In fact, we know no other executive officer for carrying out the mandates and applying the sanctions of Courts of Record. Having shown that Napier, by the agency of Smith, withdrew from and did not restore to the sheriff, the authority which commanded and justified the capture and detention of Gidiere, his render was thus made impossible by the act of the real plaintiffs.
If we assume that the Court of Equity would have listened to Gidiere’s motion to lodge new process, or that Brown’s motion, *175 after the act of Smith for Napier, to that effect, would have been favored there, still the idea that it was the duty of either to make such movement seems too incongruous to bear argument.
If we seek to run an analogy between this case and that of a defendant’s voluntary discharge under a ca. sa., still it is manifest, that when the party is again to be arrested, there must be process in the sheriff’s hands; which cannot be considered there, if withdrawn by the plaintiff, however it might be if non-existent by the tortious act of the defendant. In case of the withdrawal by the plaintiff, the defendant can no more be in lawful custody by a voluntary render, than by a capture in invitum.
It is not a point in the case, whether Gidiere offered to render himself, or whether he should have done so at a day certain: the issue was, whether at any time after the appeal decree he could have done so, by reason of the plaintiff’s conduct. Our reasoning has been designed to show, that he was incapable of so doing for such reason. The judgment, therefore, is, that the plaintiff take nothing by his motion.
O’Neall, Wardlaw, Whitner, Glover and Munro, JJ., concurred.

Motion dismissed.